**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| TERRI FREEMAN, | |
| Plaintiff, | Civil Action No.: |
| v. | 1:21-cv-00112 |
| ALKERMES, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Terri Freeman, and brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, and the laws of the State of Georgia.  Plaintiff alleges that Defendant Alkermes, Inc. subjected Plaintiff to discrimination due to her disability, including through its failure to provide a reasonable accommodation, forced Plaintiff to take medical leave that she did not request or need and refused to restore Plaintiff into her position when she was able to work, ultimately forced Plaintiff to resign from her position due to her disability, and refused to pay Plaintiff bonuses that she earned solely because of her disability, and respectfully shows the Court as follows:

## JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of the Americans with Disabilities Act and the Family Medical Leave Act, 29 U.S.C. § 2617.  This Court should exercise its supplemental

jurisdiction over the subject matter of Plaintiff's state law claims in this action pursuant to 28 U.S.C. § 1367.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in Leesubrg, Lee County, Georgia, and she was assigned to work, was actually employed, and the events underlying this action occurred within this judicial district.

**PARTIES**

3.

Plaintiff Terri Freeman (hereinafter, "Plaintiff" or "Freeman") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Ms. Freeman was employed with Defendant Alkermes, Inc.

4.

At all relevant times, Ms. Freeman was considered a covered, non-exempt employee under the Americans with Disabilities Act and the Family and Medical Leave Act.

5.

Defendant Alkermes, Inc. (hereinafter, "Defendant") is a foreign profit corporation incorporated under the laws of the State of Pennsylvania.  Defendant may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, C T Corporation System, located at 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

6.

Defendant has employed in excess of 15 employees, working for at least 20 calendar weeks, in 2020 and preceding years, and is engaged in an industry affecting interstate commerce.

As a result, Defendant is a covered employer within the meaning of the Americans with Disabilities Act.

7.

Defendant is a covered employer under the Family and Medical Leave Act because Defendant is engaged in commerce in an industry affecting commerce and had employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current and preceding calendar years.

## STATEMENT OF FACTS

8.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 7, as if the same were set forth herein.

9.

Ms. Freeman was employed with Defendant, which is a global pharmaceutical company, as an outside sales representative (hereinafter, "sales rep") for approximately five years.

10.

Ms. Freeman's position required her to work long hours, meet with medical providers in her sales territory in South Georgia, travel extensively throughout the state and cross-country, and meet certain benchmarks for the sale of pharmaceutical products.

11.

As evidenced by her tenure, Ms. Freeman was qualified for the position of sale rep.

12.

Throughout her tenure, Ms. Freeman's performance was exemplary.

13.

Ms. Freeman has been diagnosed with, and suffers from, a medical condition known as rheumatoid arthritis (hereinafter, "RA").

14.

RA is an autoimmune disorder that results in a person's immune system to mistakenly attack tissues throughout such person's body.  Unlike osteoarthritis, RA affects the lining of joints and results in painful swelling and the erosion of bones over time.  This inflammation also causes damage to other parts of the body.  As a result of her RA, Ms. Freeman often experiences the aforementioned symptoms, along with tender and swollen joints.

15.

Symptoms of RA such as joint stiffness and pain are often worse in the mornings and after periods of sitting or inactivity.

16.

RA also results in fatigue, fever, and loss of appetite.

17.

The onset of RA systems are known as "flares" and are often unpredictable with varying levels of pain.

18.

Ms. Freeman's RA symptoms are also exacerbated by stress.

19.

In addition to the impacts that RA has on Ms. Freeman's ability to walk, travel, eat, and sit for extended periods of time, she found that the disease and its symptoms sometimes interfered with Ms. Freeman's ability to work at times.

20.

As a result of the foregoing, Ms. Freeman had a disability within the meaning of the Americans with Disabilities Act during her tenure working for Defendant.

21.

In the final quarter of 2018, Ms. Freeman began to experience a worsening of her condition that required her to occasionally take time off of work because of the symptoms.  As a result of taking approximately 34 days of leave from work in that quarter because of her medical condition, Ms. Freeman did not hit some of her benchmarks.

22.

At that time, Defendant threatened to place Ms. Freeman on a performance improvement plan (hereinafter, "PIP") and she was given a negative performance review.

23.

Ms. Freeman was concerned about Defendant's threat because she knew that being placed on a PIP would disqualify her from being considered for promotions and receiving bonuses, and she also knew that it would increase the likelihood that she could be laid off.

24.

Still, Ms. Freeman met most of Defendant's benchmarks for her position 2018.

25.

Ms. Freeman still out-performed many of her similarly-situated coworkers, who did not suffer from RA or another disability, and Defendant did not threaten to place the other coworkers on a performance improvement plan.

26.

Ms. Freeman pushed hard and her performance improved substantially during the beginning of 2019.

27.

However, in April 2019, Ms. Freeman's medical provider found that the RA was not responding as he expected to medication and treatment that had been prescribed.  Because of this, along with the stress brought on by Ms. Freeman's position and all of the travel that was required of her, Ms. Freeman's doctor recommended that she take a brief period of leave in order to alleviate her symptoms and improve her condition.

28.

Defendant approved Ms. Freeman's request for leave pursuant to the Family and Medical Leave Act and short-term disability benefits, and Ms. Freeman took a short leave of absence.

29.

As a result of Ms. Freeman's request for leave, Defendant was aware of Ms. Freeman's medical condition, and thereafter regarded her as a person with a disability.

30.

The rheumatologist cleared Ms. Freeman to return to work on July 1, 2019, and the doctor suggested some restrictions that would help alleviate the risk of flare ups.  For example, the doctor suggested that Ms. Freeman reduce the amount of time that she would spend driving and that there should not be any prolonged sitting, standing, or walking.

31.

The doctor also suggested that Ms. Freeman reduce the overall number of hours that she was working, and that Ms. Freeman be granted liberal leave so she could follow up with her doctors or in the event that an unexpected flare occurred.

32.

Defendant has a dress code for its sales reps that includes professional attire, and its female sales reps were required to wear shoes with at least a low heel.  Ms. Freeman's rheumatologist suggested that Defendant permit Ms. Freeman to wear more comfortable shoes, such a sneakers, to avoid the foot pain associated with her RA.

33.

After Ms. Freeman discussed the suggestions with her medical provider, and in anticipation for her July 1, 2019 return to work, Ms. Freeman sent a letter to Human Resources just before she was set to go back.  This letter explained Ms. Freeman's medical condition and provided the specific accommodations that Ms. Freeman and her doctor discussed.

34.

On the morning of July 1, 2019, Ms. Freeman sent an email to her supervisor as notice that she had begun work for the day since she worked remotely.

35.

Even though Ms. Freeman's doctor had explicitly cleared Ms. Freeman to return to work on July 1, 2019 in a doctor's note dated May 20, 2019, Defendant refused to allow Ms. Freeman to come back to work.

36.

Specifically, Ms. Freeman received a call on her first day back from Defendant's Vice President of Human Resources Shannon Smith (hereinafter, "VP Smith"), who told Ms. Freeman that she was not able to come back until she provided a "return to work" letter from her doctor. VP Smith also stated that Ms. Freeman had to be at 100% in order to return to work.

37.

Defendant did not respond to Ms. Freeman's requested accommodations that she had asked for in writing just before her return.

38.

By July 8, 2019, Ms. Freeman had not heard anything else from Defendant, and she was able to see her doctor that day.  When the rheumatologist discovered that Defendant was not honoring the restrictions that he provided for Ms. Freeman, the doctor felt like keeping Ms. Freeman out of work for several more weeks was the only option.

39.

In his doctor's note on the same date, the rheumatologist said that he was recommending that Ms. Freeman be excused until August 1, 2019, but she could "continue working after that with the following restrictions: 1) Limit drive time to less than 1.5 hours consecutively. 2) Should be allowed to wear comfortable shoes."

40.

As Ms. Freeman's August 1, 2019 return date approached, Defendant had still failed to address the doctor's restrictions and Ms. Freeman's request for reasonable accommodations, which gave Ms. Freeman and her doctor the impression that it was refusing to modify Ms. Freeman's schedule or provide her with any accommodation.

41.

As a result of Defendant's failure to provide Ms. Freeman with what she requested, her doctor decided to keep her out of work until September 1, 2019.

42.

In early September 2019, Ms. Freeman spoke to VP Smith.  VP Rep. Smith explained that Ms. Freeman's short-term disability benefits would be ending soon, and therefore it was nearing time to "part ways."

43.

On October 31, 2019, Ms. Freeman learned from Defendant's third-party benefits administrator that Ms. Freeman's application for long-term disability benefits had been approved.

44.

However, Ms. Freeman had not submitted or otherwise requested long-term disability benefits.

45.

Soon after Ms. Freeman spoke to the third-party benefits administrator, VP Smith contacted Ms. Freeman out of the blue.  VP Smith explained that Ms. Freeman was not going to be approved for long-term disability benefits unless she *immediately* tendered her resignation.

46.

Ms. Freeman was taken aback by this news and was not sure what she was supposed to do. Ms. Freeman asked VP Smith for more time before she had to submit her resignation, and VP Smith said that it would be fine if Ms. Freeman submitted her resignation by email the following day.

47.

Based on Defendant's failure to grant, or even discuss, the accommodations that Ms. Freeman had requested, Defendant gave Ms. Freeman the belief that she was going to be unable to work due to her medical condition.

48.

Since Defendant indicated that Ms. Freeman would not receive any form of compensation or benefits unless she tendered her resignation, Ms. Freeman felt as though her only choice was to resign.

49.

On November 1, 2019, the day after the conversation with VP Smith, Ms. Freeman submitted her resignation as instructed.

50.

Earlier in October 2019, Ms. Freeman spoke with Leave of Absence Specialist Helesha Carey, who assured Ms. Freeman that she would still be able to receive a bonus for meeting her production numbers earlier in the year, despite being on leave in the third quarter of 2019.

51.

However, when Ms. Freeman received a bonus on December 13, 2019 that was much smaller than she had expected, she followed up with Defendant. At that time, Defendant informed Ms. Freeman that, even though her sales numbers should have qualified her for a bonus, she would not receive a bonus for Q3 2019 solely because she was on medical leave at that time.

Procedural/Administrative Background

52.

On or about April 29, 2020, Ms. Freeman submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been subjected to discrimination based disability, including Defendant's failure to provide a reasonable accommodation, in violation of the Americans with Disabilities Act.  The EEOC assigned Ms. Freeman Charge Number 410-2020-05344.

53.

Defendant had notice of Ms. Freeman's Charge of Discrimination, participated in the proceedings before the EEOC, and was represented by counsel during said proceedings.

54.

On March 15, 2021, Ms. Freeman, through counsel, received a Dismissal and Notice of Rights issued by the EEOC dated March 10, 2021.

55.

Ms. Freeman has exhausted her administrative remedies as to her Charge of Discrimination and she is filing the instant action within ninety days of the EEOC's issuance of, and her receipt of, a Dismissal and Notice of Rights.

**COUNT I:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

56.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 55, as if the same were set forth herein.

57.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

58.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

59.

As alleged herein, Plaintiff was employed with Defendant for approximately five years and served in the role of sales representative.  Plaintiff had been performing her duties in that role, and she was otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

60.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

61.

Specifically, Plaintiff suffers from rheumatoid arthritis, which substantially limits several major life activities for Plaintiff such as her sitting, traveling, eating, and sometimes working.

62.

Defendant was aware of Plaintiff's disability.

63.

As alleged herein, Defendant forced Plaintiff to take medical leave and refused to allow

her to work solely because of Plaintiff's disability.

64.

As alleged herein, Defendant forced Plaintiff to resign from her position solely because of Plaintiff's disability.

65.

As alleged herein, Defendant refused to pay Plaintiff bonuses that she would have otherwise been entitled solely because of Plaintiff's disability.

66.

Plaintiff has been injured by Defendant's discrimination based on disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay, compensatory and punitive damages in an amount of not less than $300,000.00, reinstatement and injunctive relief or front pay, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT II:**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

67.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 55, as if the same were set forth herein.

68.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

69.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

70.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

71.

As alleged herein, Plaintiff was employed with Defendant for approximately five years and served in the role of sales representative.  Plaintiff had been performing her duties in that role, and she was otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

72.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

73.

Specifically, Plaintiff suffers from rheumatoid arthritis, which substantially limits several major life activities for Plaintiff such as her sitting, traveling, eating, and sometimes working.

74.

Defendant was aware of Plaintiff's disability.

75.

As alleged herein, Plaintiff and her physician requested that Defendant reduce the amount of time that Plaintiff would be required to drive, sit, stand, or walk, allow for liberal leave for the purposes of doctor's appointments or in the event that she experienced an unexpected flare of her symptoms, and permit Plaintiff to wear more comfortable shoes than were required under Defendant's dress code.

76.

The accommodations requested by Plaintiff were available, would have been effective, and would not have posed an undue hardship on Defendant.

77.

Defendant failed and refused to provide Plaintiff with the accommodations that she requested.

78.

Defendant also failed and refused to engage in the interactive process to explore other accommodations that may have been available.

79.

Plaintiff remained out of work beginning on July 1, 2019, solely because Defendant refused to grant, consider, or even discuss the accommodations that Plaintiff requested.

80.

Plaintiff has been injured by Defendant's discrimination based on disability due to its failure to provide a reasonable accommodation for Plaintiff's disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including back pay, compensatory and punitive damages in an amount of not less than $300,000.00, reinstatement and injunctive

relief or front pay, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT III:**
**INTERFERENCE WITH RIGHTS UNDER**
**FAMILY AND MEDICAL LEAVE ACT**

81.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 55, as if the same were set forth herein.

82.

At all times relevant to this Complaint, Defendant was a covered, non-exempt employer pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*.

83.

As alleged herein, Plaintiff was eligible for leave pursuant to the Family and Medical Leave Act.

84.

According to the Family and Medical Leave Act, eligible employees are entitled to a total of 12 workweeks of leave during any 12-month period for their own serious health condition that makes the employee unable to perform the functions of the position of the employee. 29 U.S.C. § 2612(a)(1).

85.

Under the Family and Medical Leave Act, employers are required to restore any eligible employee who takes leave back into their position upon certification from the employee's healthcare provider that the employee is able to resume work. 29 U.S.C. § 2614(a).

86.

Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided under this chapter."  29 U.S.C. § 2615(a)(1).

87.

As alleged herein, in April 2019, Plaintiff submitted a certification from her medical provider showing that Plaintiff was unable to work due to her own serious health condition of rheumatoid arthritis.

88.

Defendant approved Plaintiff's request for leave soon thereafter.

89.

Initially, Plaintiff's physician estimated that Plaintiff would be able to return to work in May 2019, but subsequently extended that date to July 1, 2019 because Plaintiff's condition had not improved as initially expected.

90.

Prior to July 1, 2019, Plaintiff provided Defendant with her medical provider's certification that Plaintiff could return to work on July 1, 2019.

91.

On July 1, 2019, Plaintiff was actually able to work, and she attempted to return from her FMLA leave.

92.

However, on July 1, 2019, Defendant refused to restore Plaintiff to the position that Plaintiff held when her leave commenced.

93.

On July 1, 2019, Defendant refused to retore Plaintiff an equivalent position with equivalent benefits, pay, and other terms and conditions of employment as the one that she held when the leave commenced.

94.

Defendant forced Plaintiff to extend her period of leave from July 1, 2019, until Plaintiff's involuntary resignation on November 1, 2019.

95.

In the alternative, Defendant refused to allow Plaintiff to return to work on July 1, 2019 after, and as a direct result of, Plaintiff exercising her right to take leave pursuant to the Family and Medical Leave Act.

96.

Plaintiff was sustained economic injuries as a direct and proximate result of Defendant's violation of Plaintiff's rights and/or retaliation for Plaintiff exercising her rights pursuant to the Family and Medical Leave Act.

97.

Defendant willfully violated Plaintiff's rights under the Family and Medical Leave Act because Defendant knew or showed reckless disregard for whether Defendant's conduct was prohibited under the Family and Medical Leave Act.

98.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(i), Defendant is liable for damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of this violation, in an amount to be proven at trial.

99.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), Defendant is liable for interest on Plaintiff's damages, calculated at the prevailing rate, and in an amount to be proven at trial.

100.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), due to Defendant's willful violation of the Act and reckless disregard of whether Defendant's conduct was prohibited, Defendant is liable for an additional amount as liquidated damages, equal to the total amount of Plaintiff's damages and interest as described herein, in an amount to be proven at trial.

101.

Pursuant to 29 U.S.C. § 2617(a)(1)(B), Defendant is liable for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

102.

In addition to judgment being awarded in her favor, Plaintiff is entitled to reasonable attorney's fees, reasonable expert fees, and other costs of this action to be paid by Defendant, in an amount to be proven at trial.

**COUNT IV:**
**BREACH OF CONTRACT**

103.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 55, as if the same were set forth herein.

104.

Under Georgia law, the elements of a breach of contract claim consist of a breach and the resultant damages to the party who has a right to complain about the contract being broken. *Norton v. Budget Rent A Car Sys.*, 307 Ga. App. 501, 501 (2010).

105.

Defendant had an obligation to compensate Plaintiff with a bonus, provided that Plaintiff's production met certain thresholds.

106.

As alleged herein, Plaintiff performed all conditions precedent to receiving the aforementioned bonus compensation.

107.

However, Defendant refused to provide Plaintiff with the bonus compensation that she was otherwise entitled.

108.

As a result of Defendant's breach, Plaintiff has been injured and was unable to receive the benefit of her bargain – bonus compensation for meeting certain production thresholds – pursuant to Defendant's agreement with Plaintiff.

109.

Accordingly, Plaintiff is entitled to an award of damages equal to the amount of bonus compensation that Plaintiff would have otherwise received based on her agreement with Defendant and interest on Plaintiff's damages, calculated at the prevailing rate, in an amount to be proven at trial.

110.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense, and the Court is authorized to award Plaintiff reasonable attorney's fees and expenses of litigation in an amount to be proven at trial.

111.

In the alternative, provided that the evidence shows that no legal contract exists, the Court should construe an implied contract in law to avoid Defendant's unjust enrichment, and allow Plaintiff to recover the amount of the benefit that she conferred on Defendant, as alleged herein.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Terri Freeman respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Alkermes, Inc., and that said Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on disability, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

4) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on disability, as a result of Defendant failure to provide Plaintiff with a reasonable accommodation for her disability, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

5) That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for interference with Plaintiff's right pursuant to the Family and Medical Leave Act, and grant Plaintiff all relief allowable under the same, including liquidated damages and attorney's fees and costs of litigation;

6)     That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for breach of contract and/or unjust enrichment, and grant Plaintiff all relief allowable under the law; and,

7)     For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 8th day of June, 2021.

KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com